NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

_____

In re:                                          :    Bankruptcy Case No. 05-56819
                                                :
PETER CASINI                                    :    Chapter 13
                                                :
          Debtor.                               :
                                                :    **MEMORANDUM OPINION**
                                                :    Hearing Date: April 22, 2008
_____:              Document Number 72

**APPEARANCES**

Linda Reinheimer, Esquire
REINHEIMER & REINHEIMER
200 Main Street
PO Box 1086
Toms River, N.J. 08754
Attorney for Debtor, Peter Casini

Lawrence P. Blaskopf, Esquire
Thomas J. Jaworski, Esquire
US DEPARTMENT OF JUSTICE
PO Box 227
Ben Franklin Station
Washington, D.C. 20044
Attorney for United States Internal Revenue Service

The Internal Revenue Service, through the Department of Treasury ("IRS") filed a priority claim against the estate of Peter Casini ("Debtor" or "Mr. Casini") in the amount of $82,185.92, including $72,153.00 in penalties and $7,156.73 in interest. The taxes assessed were based on 941 Employer's Quarterly Federal Tax Returns on behalf of Cobra Sport Fishing Boats, Inc. ("Cobra"). Mr. Casini was the founder, President, sole shareholder and animating force behind Cobra, at least until April or May of 1999. The Quarterly Tax returns at issue are from the periods ending March 31, 1999, June 30, 1999, September 30, 1999 and December 30, 1999 ("the Returns").

Mr. Casini in this motion seeks to have the claim filed by the IRS reduced to zero based on three interlocking theories: 1) that he did not execute the Returns on which the claim is based 2) that he was not a responsible officer of Cobra at the time the taxes accrued because he resigned any and all interests in Cobra as of May 1999 and 3) the IRS has not met its burden of establishing that the assessed amount is accurate.

The Returns purport to be signed by Mr. Casini. Nonetheless, Mr. Casini denies executing the returns and further claims that he resigned from Cobra in April or May of 1999. He testified that he resigned from Cobra on the advice of counsel to free himself up to form a new corporation that could better protect his vessel designs under a then-newly created Hull Registration Act. He claims that he resigned on the advice of counsel and that Earl Sayas ("Mr. Sayas"), Cobra's maintenance man, was installed as Cobra's president in May of 1999.

Mr. Casini presented the unrebutted testimony of a handwriting expert to support his own testimony that the signatures on the Returns were not his. The court will find that he did not execute the Returns on the basis of the record presented. In a sense, this issue is a red herring, since he could

have authorized the bookkeeper to sign the returns. Mr. Sayas testified that Maryann Gellard[1] signed most of the checks and documents on behalf of Cobra, but only after authorization by Mr. Casini. Regardless of whether he himself actually put ink to paper, he can still be liable for accrued taxes if he remained a responsible officer during the time the liability.

The crucial question is whether Mr. Casini remained Cobra's responsible officer during the time at issue. On this issue, Mr. Casini's claim that he resigned as president and sole shareholder of Cobra is utterly unconvincing. Mr. Casini, and Cobra's attorney Karl E. Meyer, claim that Mr. Casini divested himself of Cobra because of changes in the copyright laws that created protections for hull design. Mr. Casini did not cite to the act, but that court notes that Title V of the Digital Millennium Copyright Act of 1998, 17 U.S.C. § 1301, ostensibly creates a sui generis form of intellectual property in vessel hull designs including molds and plugs used to duplicate a hull design. Nonetheless, neither the witnesses nor the court's review of the statue explained why a new entity needed to be formed in order to gain the protections of the new law. More critically, neither explained why, even if formation of a new entity was wise, Mr. Casini could not serve a president of both corporations. They did not explain why Mr. Casini, who was admittedly the founder, President, sole shareholder and decision-maker at would turn the responsibility to "close out" the company to an employee who sole previous responsibilities were to serve as maintenance man and go-fer for $10 an hour[2]. They did not explain why none of the other witnesses, including Mr. Sayas,

---

[1] Phonetic spelling. The court was not provided with the spelling of Ms. Gellard's name and Mr. Sayas was unable to spell it confidently at his deposition.

[2] Even after he got a raise in the spring of 1999, Mr. Sayas was only paid $15 per hour. This is hardly the type of compensation typical of a person exercising the responsibilities of corporate president.

Sander J Greenberg and Bruce Betcher, ever observed anything that would indicate that anyone other than Mr. Casini was president and never observed Mr. Sayas performing any function other than as a low-level employee. They did not produce a formal resignation document: In fact, the only documentary evidence to which they can point is Mr. Sayas's signature on the Bankruptcy petition filed some 2 years later and accompanied by Mr. Sayas's testimony that the word "president" was not on the document when he signed it. Mr. Casini's testimony that Mr. Sayas was only a "Figurehead President" belies his implicit argument that Mr. Sayas can be found to be a responsible party under the tax code. Mr. Casini's testimony that he resigned in May of 1999 defies common sense and is not credible.

Mr. Casini's final argument, that the IRS has failed to establish the accurate amount due for the periods in question is consistent with the record, but misapprehends the burden of proof. That is, the record is devoid of any of the records underlying the IRS assessment: While there was disputed testimony about the number of Cobra employees during the time in question, there was no testimony whatsoever about how much the employees were paid or how much tax was withheld. The only evidence of the amount due is the Returns, which the court cannot find were executed by Mr. Casini, and the Certificate of Assessment.

Mr. Casini's argument is not enough, however, on which to base a reduction of the filed claim. A properly executed and filed proof of claim constitutes prima facie evidence of the validity and amount of the claim. *Bankr. R.* 3001(f); 11 U.S.C. § 502(a). The party objecting to the claim bears the initial burden of producing evidence to defeat the claim. To overcome a proof of claim's prima facie validity, the objecting party must bring forward evidence equal in probative force to that underlying the proof of claim. In re Wells, 51 B.R. 563, 566 (D. Colo. 1985); COLLIER ON

BANKRUPTCY, § 502.02 ("Should objection be taken, the objector must produce evidence and show facts tending to defeat the claim by probative force equal to that of the allegations in the proof of claim.")

The Supreme Court has held that the fact that a tax claim arises in bankruptcy does not alter the taxpayers burden of proof. Raleigh v. Illinois Dep't of Revenue, 530 U.S. 15 (2000)(where the burden of proof is on taxpayer under substantive law creating tax obligation, the burden of proof on the tax claim in bankruptcy court remains where it is under the substantive law); Resyn Corp. v. U.S., 851 F.2d 660 (3d Cir. 1988); In re CM Holdings, Inc., 254 B.R. 578 (D. Del. 2000). Where the claim is for an assessed federal tax, the burden of proof will remain upon the objecting party. Raleigh v. Illinois Department of Revenue, 530 U.S. 15, 20-21, (2000) *as cited in*, In re Kingsville Motors, Inc., 2008 WL 686724, 3 (Bankr. D. Md. 2008)

The only proof submitted by the Debtor is his own testimony that he never saw the tax assessment served on Maryann Gellard at his home in 2002. Aside from lacking credibility, this is not a substantive evidence sufficient to overcome the presumption of validity under the law.

Despite the fact that Mr. Casini's claim that he did not sign the Returns went unchallenged, Mr. Casini has not met his burden of overcoming the presumptive validity of the tax claims assessed by the IRS. His motion to reduce the claims will be denied with the standard order.

                                                 */s/ Kathryn C. Ferguson*
                                                 KATHRYN C. FERGUSON
                                                 US Bankruptcy Judge

Dated: June 2, 2008